UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.  12-CR-60064-Goldberg

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| KEVIN BRENNAN et al., | ) |
| | ) |
| Defendants. | ) |

### RESPONSE TO UNTIMELY MOTION TO SUPPRESS

The United States of America, through the undersigned Assistant United States Attorney, respectfully submits this Response to Defendant Marc Seaver Page's untimely Motion to Suppress (DE 138), which was adopted by Defendant Kevin Brennan (DE 139).  In their untimely Motion, the Defendants argue that the Court should suppress the tape recordings of them engaging in securities fraud because the undercover cooperating defendant made some of the recordings without the agent being physically present.  The Court should deny the untimely Motion because it is frivolous and the Defendants cannot meet their burden of showing that the cooperating defendant acted with an impermissible purpose. *See, e.g., United States v. Andreas*, 216 F.3d 645, 661 (7th Cir. 2000) (stating that "no cases" demand what the defendants claim the law requires); *United States v. Truglio*, 731 F.2d 1123, 1131 (4th Cir. 1984) (defendant's burden).  Simply put, the un-controverted evidence shows that the agent instructed the cooperating defendant to record his conversations with Defendants Page and Brennan.  The cooperating defendant, therefore, was operating under color of law and the tapes are admissible.

### BACKGROUND

By way of brief background, on December 11, 2007, cooperating defendant Richard Epstein

was indicted in the Eastern District of Philadelphia for engaging in conduct similar to the conduct alleged in this case, specifically paying an undisclosed bribe to induce someone to make illegal purchases of a stock. Shortly after he was arrested, Mr. Epstein agreed to cooperate with law enforcement to help prosecute other individuals engaging in the same criminal conduct and to reduce his own sentence. (He later received a sentence that did not consist of incarceration.)

As part of this cooperation, Richard Epstein and FBI Special Agent Michael Sputo discussed potential targets of an undercover securities fraud sting operation. When Special Agent Sputo instructed Mr. Epstein to record an individual as a target, Mr. Epstein did so. Otherwise, Mr. Epstein did not record phone calls.

Before January 2010, Mr. Epstein received phone calls from Defendant Marc Seaver Page regarding various companies in which Page encouraged Epstein to invest. At the time, Mr. Page was not the target of the sting operation and, therefore, no calls were recorded. That changed in January 2010. In an *unrecorded* conversation, Mr. Page encouraged Mr. Epstein to contact "D.T.," an individual who could potentially become involved in a securities fraud involving paid buying for a stock. Mr. Epstein brought the matter to the attention of the FBI, which instructed Mr. Epstein to begin recording conversations with Mr. Page.

The first recorded conversation began on January 25, 2010. In that recorded conversation, Mr. Epstein explained, unambiguously, to Mr. Page that Mr. Epstein had the ability to manipulate the volume and price of a stock by paying a stock broker. As explained on the tape to Mr. Page, the stock broker would not engage in the illegal conduct "pro-bono out of the goodness of his heart." Instead, the stock broker needed to be paid to ensure that "those trades are directed," that is, buyers are illegally pre-matched with sellers. In numerous subsequent recordings with Defendants Page and

Brennan, including one meeting with Defendant Brennan Defendant Page introduced Mr. Epstein to Defendant Brennan, who made payments to a stock broker to induce the broker to make illegal trades.

Mr. Epstein was in continuous contact with Special Agent Sputo and others at the FBI about his recordings, although - in most instances - no agent was physically present for the phone recordings, which occurred at Mr. Epstein's home office.

As a general practice, before each outgoing call or meeting, Mr. Epstein checked with Special Agent Sputo and received instructions on how to proceed. After phone calls, Mr. Epstein generally updated Special Agent Sputo about the nature of the conversations, and awaited further instructions.

## ARGUMENT

The government seeks to introduce these tapes at trial, and the Defendants - realizing just how damaging the tapes are - seek to exclude them, claiming that the FBI's supervision of Mr. Epstein was insufficient. They are mistaken.

### I.  The Cooperating Defendant's Recordings Are Admissible Because the Cooperator Was "Acting Under Color of Law."

The Eleventh Circuit case law is clear. "Courts have established that informants who record private conversations at the *direction* of government investigators are 'acting under color of law,'" and that the recordings are admissible. *United States v. Haimowitz*, 725 F.2d 1561, 1582 (11th Cir. 1984) (emphasis added). In *Haimowitz*, the court concluded that the informant was acting "under color of law" even though the informant made recordings "outside the presence of the government agents and with control over the on and off switch to the equipment." *Id.* Moreover, in *United States v. Shields*, 675 F.2d 1152 (11th Cir. 1982), the defendant hired a private investigator to help

him tape conversations between him and his conspirator. The FBI provided the investigator with recording equipment; and the defendant's investigator, *not the FBI*, controlled the recording equipment. *Id.* at 1156-56. The Eleventh Circuit Court of Appeals held that although the FBI was not present when the conversations were recorded, the defendant's private investigator was still acting under "color of law," and as such, the recordings were admissible. *Id.* at 1156-57.

It is worth noting that the Eleventh Circuit's position has been adopted in every Circuit Court of Appeals to have considered this issue. *Cf. United States v. Corona*, Case No. 3:05-CR-148, 2007 WL 1894292 (E.D. Tenn. July 2, 2007) (citing *Obron Atlantic Corp.*, 990 F.2d 861, 864-65 (6th Cir. 1993)) (similar facts); *United States v. Diaz-Diaz*, 433 F.3d 128, 132-34 (1st Cir. 2005); *United States v. Pervaz*, 118 F.3d 1, 6 (1st Cir. 1997). Indeed, in *United States v. Andreas*, 216 F.3d 645, 660-61 (7th Cir. 2000), the Seventh Circuit made clear that the Defendants' claim in this case is frivolous because "No cases demand that the government's supervision of its cooperating witnesses and informants need be flawless. … What we find essential is that the government requested or authorized the taping with the intent of using it in an investigation and that they monitored the progress of the covert surveillance activities."

In this case, the FBI directed Mr. Epstein to record all conversations with Defendants Page and Brennan. The FBI provided Mr. Epstein with the recording equipment and retrieved the tapes from Mr. Epstein. That is all that the law requires.

**II.    Even if Mr. Esptein Was Not "Acting Under Color of Law," the Tapes Are Still Admissible.**

Assuming *arguendo* that Mr. Epstein did not make the recordings "under color of law," the recordings would still be admissible at trial under 18 U.S.C. § 2511(2)(d) because the recordings

4

were not "intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States."

It is settled that the legality of an interception pursuant § 2511(2)(d) is determined by the purpose for which the interception is made, not by the subject of the communications intercepted. *United States v. Underhill*, 813 F.2d 105, 110 (6th Cir.1987) (*citing United States v. Truglio*, 731 F.2d 1123, 1131 (4th Cir. 1984)). For example, in *United States v. Jiau*, a district court in the Southern District of New York admitted recordings that were created as a record of information to be conveyed to a hearing impaired person because such recordings were not made for the purpose of harming anyone. 794 F.Supp.2d 484, 487 (S.D.N.Y 2011). That is, according to the district court, suppression is only appropriate where a person records a non-consenting party for the purpose of blackmail, harassment, or some other harm to the non-consenting party or third party. *Id.* at 488. Moreover, in *Underhill*, the Sixth Circuit noted that recorded conversations of illegal bets for the purpose of settling any future disputes was not an element of the criminal act of making and accepting bets, and that those tapes would be admissible. 813 F.2d at 111. The court also stated that "when the purpose of an interception is to make or preserve an accurate record of a conversation ... to prevent further distortion by a participant, the interception is legal." *Id.* at 110. Finally, in *Traficant v. Commissioner of Internal Revenue Services*, 884 F.2d 258, 266 (6th Cir. 1989), the Sixth Circuit Court of Appeals permitted the introduction of tape recordings involving briberies because there was "no evidence that the tapes had ever been used in any unlawful scheme, or that any threat had been made to use them."

Simply put, the tapes in this case are admissible because the Defendants cannot meet their burden in showing that Mr. Epstein made the recordings "with the intent to harm the non-consenting

5

party or a third party," in this case Defendants Page and Brennan. *See Jiau*, 794 F.Supp.2d at 487. Instead, as is abundantly clear given the nature of the investigation, the purpose was to further law enforcement's efforts to eradicate the rampant securities fraud in the penny stock market, which is what led to the pending charges against the Defendants.

### III.   The Content of the Recordings (and the Transcripts) Are Admissible.

If the Court were to grant the Defendants' untimely Motion and suppress the tapes, the government will still seek to introduce the *contents* of those recordings, albeit not in their recorded format.

By way of background, Mr. Epstein is in a position to testify about his meeting and phone calls because he recalls being an eye witness to the Defendants' crimes as captured on tape. The government is prepared to elicit testimony from Mr. Epstein regarding those phone calls and the meeting. That is, Mr. Epstein can speak, generally, about the nature of these conversations because he witnessed them.

If Mr. Epstein were to forget the exact words that either he or one of the Defendants used during those conversations, the transcripts of the recordings (which have been provided to defense counsel) could be used to refresh his recollection. After having his memory refreshed, Mr. Epstein could then utter the very words used in the conversation even though the jury would not be able to hear the Defendants' voices on the tapes saying those words. By this method of introducing evidence, the Defendants' crimes could be reenacted verbatim by asking Mr. Epstein to re-state (and if he cannot to refresh his recollection from the transcript) every word in the transcripts. This method would take significantly longer, but it would still allow the jury to hear every word that the Defendants uttered during the fraud scheme. After the entire conversation was reenacted to the jury,

the government would seek to introduce the transcript for the jury to review.

### IV.     Argument that the Government Investigation Was Defective is Irrelevant.

Finally, the Court should prevent defense counsel from making any agreements or asking any questions before the jury regarding the sufficiency of the government's investigation, and whether Mr. Epstein fully complied with the instructions given to him by Special Agent Sputo. Assuming defense counsel could possibly find flaws with the government's investigation in this case, "[m]erely showing that an investigation is sloppy does not establish relevance." *United States v. Patrick*, 248 F.3d 11, 22 (1st Cir.2001), cert. denied, 535 U.S. 910, 122 S.Ct. 1215, 152 L.Ed.2d 152 (2002). Rather, the purported "sloppy investigation" evidence must be related to a specific issue in the case. *Id.* at 22-23. The evidence relating to what instructions Mr. Epstein received and how he responded are not relevant to any issue in this case because only the Defendant's intent and actions are at issue. Moreover, "[s]uch speculative evidence of the inadequacy of the police investigation would have shifted the jury's focus from the accusations against [the defendant] to accusations against the police, thus creating a real danger of unfair prejudice and jury confusion that 'substantially outweighed' the evidence's probative value." *Id.* at 23.

For these reasons, the Court should prevent the Defendants from seeking to confuse the jury about what this case is about: The Defendants' illegal actions as captured on tape, instead of whether the government and its cooperating defendant dotted every "*i*" and crossed every "*t*."

7

## CONCLUSION

For these reasons, the Court should deny the Defendant's Motion and permit the government to introduce the tape recordings of conversations between Richard Epstein and the Defendants.

Respectfully submitted,

WIFREDO A FERRER
UNITED STATES ATTORNEY

By:     s/ H. Ron Davidson
H. RON DAVIDSON
Assistant United States Attorney
Court ID No. A5501144
99 Northeast Fourth Street, 4th floor
Miami, Florida 33132-2111
Tel: (305) 961-9405
Fax: (305) 530-6168
E-mail: H.Ron.Davidson@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 18, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/ H. Ron Davidson
H. RON DAVIDSON
Assistant United States Attorney