```
                  UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
                   CASE NO. 14-62045-CV-RWG
                    (CASE NO. 12-60064-CR-RWG)
```

KEVIN BRENNAN,                    )
    Petitioner,               )
v.                                )
                                  )
                                  )
UNITED STATES OF AMERICA,         )
    Respondent.               )

## ANSWER TO PETITIONER'S CLAIM FOR RELIEF
## PURSUANT TO 28 U.S.C. § 2255

The United States, through the undersigned Assistant United States Attorney, respectfully submits this Response to Petitioner Kevin Brennan Petition for Relief Pursuant to 28 U.S.C. § 2255. In his Petition, (DE 1,) Mr. Brennan claims that he suffered a violation of his constitutional rights because his Defense Counsel failed to argue that the intended loss in his criminal case was below $400,000.[1]

The Court should deny the Petitioner's claim because Mr. Brennan's Counsel <u>did</u>, in fact, raise the <u>exact</u> issue that Mr. Brennan faults his Counsel for failing to argue at sentencing. Furthermore, the Eleventh Circuit Court of Appeals repeatedly rejected the very claim that Mr. Brennan says that his attorney should have raised. For these reasons, Petitioner cannot establish a violation of his Constitutional rights and any basis for relief.

---

[1] Brennan filed his Petition on July 23, 2014. The Court of Appeals issued its Mandate on issued on July 15, 2014 (Case No. 12-60064-RWG, DE 266). There was no writ of certiorari from the Supreme Court, meaning the judgment of conviction became final 90 days after July 15, 2014.

**FACTUAL AND PROCEDURAL BACKGROUND**

By way of background, Petitioner Kevin Brennan was indicted by a federal grand jury in Miami for conspiring to commit securities fraud, in violation of 18 U.S.C. § 371; and two counts of substantive securities fraud, in violation of 18 U.S.C. § 1348. (<u>United States v. Brennan, et al.</u>, Case No. 12-60064-CR-RWG, DE 3.) The Indictment described how Mr. Brennan was the President of Optimized Transportation Management, Inc. (OPTZ), a Delaware corporation that had stock traded on the so-called Pink Sheet. (<u>Id.</u>) The Indictment alleged that Mr. Brennan and his conspirators "engage[d] in a pay-to-play scheme to cause a stock broker to purchase OPTZ stock in exchange for a kickback." (<u>Id.</u>) The purpose of this undisclosed bribe was to "give the investing public the false impression that OPTZ's stock price was rising and that there was a public market for OPTZ stock." Finally, to further the conspiracy – according to the Indictment – Mr. Brennan prepared press releases to be issued "timed to coincide with the fraudulent purchases of OPTZ stock." (<u>Id.</u>)

Mr. Brennan proceeded to trial,(<u>id.</u> DE 184-188) where the government proved that Mr. Brennan agreed to make an illegal bribe to induce a stock broker to purchase OPTZ funds with his client's money. (Tr. 2/11/2013 at 145 (Q: And in your experience, is a stockbroker generally supposed to get a kickback for buying shares on behalf of his client? A: No. That's illegal.)) The government

specifically showed that Mr. Brennan intended to have the stock broker use $500,000 of his clients' money to purchase OPTZ stock. (Tr. 2/12/2013 at 19-20 (Q: When you said "$500,000 worth of buying," who did you mean was going to be doing the buying? A: That would be part of the market program where this phantom broker would go in and buy $500,000 worth of stock in the market."); Id. at 74-75 ("He was looking for $500,000 worth of buying being done over a four-week period of time and he was going to pay one share for every three shares that were bought."); Id. (Tr. Of 2/20/2013 at 83 (discussing $500,000 of buying)). Unfortunately for Mr. Brennan, his scheme to bribe a stock broker to purchase his company's stock was captured on audio and video recording as part of a covert FBI operation. The jury convicted Mr. Brennan of all counts. (Id. DE 193.)

Before sentencing, the Probation Officer stated that Mr. Brennen should be held responsible for an intended loss over $400,000 because the trial evidence established that he intended to have the stock broker use his client's money to purchase $500,000 of OPTZ stock. (DE 210.) Mr. Brennan's attorney vigorously objected to this – and other – enhancements (DE 213.) Counsel argued that there "was no actual loss in the case since it was based on a scheme created by a confidential informant working off a potential jail sentence." (Id.) Furthermore, Counsel argued that the government's evidence of a loss amount over $400,000 "is at best speculative" and the Court

should discount what could "have happened in the penny stock market." (Id.)  At sentencing, this Court heard additional oral arguments about the appropriate way to measure the intended loss, but ultimately denied Mr. Brennan's Objection.  The Court sentenced Mr. Brennan to 60 months' imprisonment (DE 224.)

Mr. Brennan appealed his sentence to the Eleventh Circuit Court of Appeals.  (United States v. Brennan, Case No. 13-13077-EE (11th Cir. Brief))  On behalf of Mr. Brennan, Defense Counsel argued that there "was no evidence at trial to show how the $500,000 fraud was to actually be carried out to that amount" and "no evidence that the money from the stock was to be used by the defendant for anything other than reinvestment in the company."  The Eleventh Circuit Court of Appeals, however, saw things differently and rejected Mr. Brennan's argument.  United States v. Brennan, 562 F. App'x 914 (11th Cir. Apr. 11, 2014); (See also Case No. 12-60064-RWG, DE 266)  The Court held that "Brennan himself testified at trial that, after being presented with the fraud scheme, he agreed to participate and wished to sell over $500,000 of [OPTZ] stock over the course of five weeks."  Id. at 916.  The Court also noted that a codefendant and cooperator "each corroborated Brennan's admission" that the "scheme was designed to raise half a million dollars."  Id.

## LEGAL STANDARD

Claims of ineffective assistance of counsel under the Sixth

Amendment are examined through the two-part test initially set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To meet the burden of proving ineffective assistance, the movant must first show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment. Id. at 687. If this showing can be made, the movant must then demonstrate that the "deficient performance prejudiced the defense," which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Unless the movant can make both showings, he cannot prevail. See id. The two prongs of Strickland are known respectively as the "performance" and "prejudice" prongs.

When a court evaluates the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (internal citations omitted). This presumption is even stronger where, as here, "the reviewing court is examining the performance of an experienced trial counsel." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc). To prove incompetence, a movant "must identify specific acts or omissions that

were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they 'were outside the wide range of professionally competent assistance.'" Brownlee v. Haley, 306 F.3d 1043, 1059 (11th Cir. 2002) (quoting Strickland, 466 U.S. at 690). As the Eleventh Circuit explained, "the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high." Id. In light of the "strong presumption in favor of competence," a movant seeking to prove a Sixth Amendment violation "must establish that no competent counsel would have taken the action that his counsel did take." Chandler, 218 F.3d at 1314-15 (emphasis added).

A movant can prevail under the second prong of Strickland only if he can "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." Strickland, 466 U.S. at 693. To make this showing, the movant must demonstrate more than "some conceivable effect on the outcome of the proceeding." Id. Although a movant need not show that the outcome of his case would more likely than not have been different absent counsel's ineffectiveness, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The Eleventh Circuit has cautioned that

"this standard is difficult to meet." Brownlee, 306 F.3d at 1059. In fact, the cases in which a defendant can prove ineffectiveness "are few and far between." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). When conducting the prejudice inquiry, a court must consider counsel's error in the context of "the totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695.

Significantly, if a reviewing court determines that a movant suffered no prejudice even if counsel's performance was deficient, it can reject an ineffective assistance claim based on the second prong of Strickland without conducting a full analysis of the first prong. Id. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

## ARGUMENT

Applying these standards, Petitioner Kevin Brennan failed to establish that he received ineffective assistance of Counsel.  First, Petitioner's claim fails under the so-called "performance" prong of Strickland.  Mr. Brennan claims that his Counsel failed to argue that the intended loss was below $400,000 (Case No. 14-62045-CIV-RWG, DE 1,) when – in fact – Defense Counsel raised that argument before both the District Court and Court of Appeals, where that argument was rejected.  For this reason, Defense Counsel's performance was not ineffective (supra).  Instead, he made reasonable efforts to defend

his client.

Second, to extent that Mr. Brennan faults his Counsel for the manner in which he made a certain argument before the Court, Brennan cannot show that his Counsel's performance resulted in any prejudice of having the Petitioner serve a longer sentence. To the contrary, this Court now has "affirmative" evidence that Counsel's purported errors "actually had" no "adverse effect on the defense." Strickland, 466 U.S. at 693 (requiring affirmative proof that error had adverse effect on defense).

By way of background, the FBI engaged in a series of covert operations that resulted in convictions based on facts similar to those presented in this case. Cf. United States v. Coblin, 11-80159-CR-RYSKAMP; United States v. Hague, 12-60124-CR-WILLIAMS; United States v. Cotton, 12-60126-CR-DIMITROULEAS; United States v. Zito, 12-20030-CR-WILLIAMS; United States v. Newton, 11-60150-CR-COOKE; United States v. Skwara, 11-60294-CR-WILLIAMS; "Southern District of Florida Securities and Investment Fraud Initiative Results in Charges against 15 Individuals in 12 Separate Cases: To Date, 85 Defendants Have Been Charged as Part of the Initiative" (Press Release of 6/4/2012) (available at www.fbi.gov/miami/press-releases/2012/southern-district-of-flori da-securities-and-investment-fraud-initiative-results-in-charges -against-15-individuals-in-12-separate-cases); "Southern District

of Florida's Securities and Investment Fraud Initiative Nets More Penny Stock Fraudsters" (Press Release of 12/7/2010 (available at http://www.fbi.gov/miami/press-releases/2010/mm120710.htm)

United States v. Newton, 559 F. App'x 902 (11th Cir. 2014), proves that Defense Counsel's purported ineffective assistance in this case would have made no difference in the outcome of the Brennan case. By way of background, in Newton, the defendant – like Brenna - was the CEO of a company.  Newton – like Brennan – agreed to bribe an individual to purchase company stock (in Brennan, the undercover funds came from a purported stock broker's client, while in Newton, the funds came from a purported pension fund, although this fact is immaterial to the analysis).  In both cases, the fiduciary purchased stock in the defendants' companies only after the defendant made a bribe to that fiduciary.  Both defendants went to trial and were convicted after the government showed that the defendants intended to induce buying through a "pay-to-play scheme".

In Newton, like in this case, the defendant argued before the district court that he did not intend to defraud the fund of the full amount that was used to purchase stock.  Specifically, the defendant in Newton (represented at trial and on appeal by experienced attorneys at the Federal Public Defender's Office) argued that the fund received something of benefit (i.e. company stock) and that that court should have discounted the intended loss by the value of the company stock

that the fund received.

The District Court, however, overruled the defendant's objection to the PSI, and held that the Guidelines awarded no value to the stock that Mr. Newton provided to the fund. The District Court in <u>Newton</u> properly reasoned that, after the fraud scheme was made public, the company stock would have virtually no value.

Newton appealed; however, after oral argument, the Eleventh Circuit Court of Appeals ruled that the District Court in <u>Newton</u> did not err in finding that the appropriate amount of loss for purposes of the Guideline calculation was the full amount of money that was removed from the pension fund. The Court of Appeals in <u>Newton</u> ruled that the "District Court did not err in the loss calculation. Instead, it gave a reasonable estimate of the loss that accounted for the likely effect that the undisclosed fraud would have on the market value of Defendant's company stock. In this case, the District Court found that the Pension Plan would not have bought the stock at all in the absence of the fraud, and found that, in light of the fraud, the Pension Fund held stock that was essentially worthless."  559 F. App'x at 914.

Simply put, had Petitioner's Counsel raised the argument that Petitioner believes that Counsel should have raised, they would have looked exactly like the arguments that Defense Counsel raised in <u>Newton</u>. But the result would have been exactly the same – the District Court and the Eleventh Circuit Court of Appeals would have rejected

that argument, much like the Court of Appeals rejected the same argument in Newton. As a result, this Court need not speculate how the Brennan case would have turned out had a different Counsel represented Mr. Brennan because, on very similar facts, the Court of Appeals already ruled that the District Court properly calculated the Guidelines after experienced attorneys from the Federal Public Defenders' Office raised arguments similar to those raised by Brennan in his Petition for Relief.

For all these reasons, Petitioner cannot meet his burden of proving a violation of his Constitutional rights under Strickland. Defense Counsel performed admirably by arguing that the intended loss was below $500,000. In addition, to the extent that Petitioner claims that his Counsel should have argued the case of intended loss slightly differently, a different Defense Counsel took similar arguments to the Court of Appeals and lost. As a result, there is no prejudice, and this Court should deny the Petition for Relief.

                                  Respectfully submitted,
                                  WIFREDO A. FERRER
                                  UNITED STATES ATTORNEY

                          By: /s/ H. Ron Davidson
                                H. Ron Davidson
                                Assistant United States Attorney
                                Court ID No. A5501144
                                99 Northeast 4th Street
                                Miami, Florida 33132-2111
                                Tel: (305) 961-9405
                                Fax: (305) 530-7976
                                H.Ron.Davidson@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 23, 2014, I electronically filed the foregoing with the Clerk of the Court using CM/ECF and mailed a copy to:

```
KEVIN P. BRENNAN
Reg. No. 33603-068
FCI – Morgantown
Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 1000
Morgantown, WC 26507-1000
```

                                                 s/ H. Ron Davidson
                                                 Assistant United States Attorney