Kevin P. Brennan, pro se
FCI - Morgantown
P.O. Box 1000
Morgantown, WV   26507-1000



FILED by _mpf_ D.C.

MAR - 4 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. - MIAMI

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | Criminal Docket |
| | ) | |
| Plaintiff / Respondent | ) | No.   12-CR-60064 |
| | ) | |
| vs. | ) | |
| | ) | |
| **KEVIN P. BRENNAN,** | ) | |
| | ) | |
| Defendant / Movant | ) | |

Supplemental Response to the Government Answer

On July 29, 2014 a motion for relief pursuant to 28 U.S.C. sec 2255 was filed with this court. On October 23, 2014 an answer to the motion was filed by the prosecutor. In November the Petitioner filed a motion for release. Included as part of the grounds for the release motion were responses to the government's answer. As yet this court has not responded to the 2255 motion therefore the petitioner is filing this document to clarify and supplement the response to the government's answer.

The government cited US v. Newton in its answer as support in requesting the court to

deny the petitioners motion. It would seem, however, the 11th Circuit through its comments in Newton is in agreement with the petitioner's position. The Circuit Court first stated that, a District Court is required to make independent findings establishing the factual basis for its US Sentencing Guidelines calculations. It may base its findings on among other things, evidence heard at trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing. The burden of proof is on the government to establish facts relevant to the loss calculation by a preponderance of the evidence. The District Court's loss calculation is entitled to appropriate deference and its reasonable estimate will be upheld on appeal. But the District Court may not base its calculation on mere speculation and the government bears the responsibility of supporting its loss calculation with reliable and specific evidence. Secondly, the Circuit Court also stated that the reduction in value of an equity security be used to determine loss. As was discussed in the original motion government did not provide any evidence to support a reduction in value of the common stock of Optimized Transportation Management, Inc. that was purchased by the government.

In Newton the defendant caused the Company to issue unregistered shares valued at the ask price, to a pension fund in exchange for cash. The scheme the government created in the petioner's case required a fee be paid to a broker in the form of "free trading" shares of OPTZ stock at the rate of 1 share for every three shares the broker bought in the market. The petioner did not own any shares of OPTZ common stock, and the Company could not issue shares of "free trading" stock. No evidence exists that any shareholder owning "free trading" shares would agree to provide them for payment to the broker. There also was no significant shareholder (a shareholder owning greater than 5% of the outstanding shares of common stock) which would then require many shareholders to participate in the government scheme. Neither the petioner nor the Company could participate in the  government scheme. There were no proceeds received by the Company or the petitioner, nor could there be. There were no shares of stock issued in the government scheme, therefore there was no dilution to the shareholder base. The Company was an operating Company with significant revenues, and a market capitalization of over $4 million. The Company was current in its filings with the SEC,

(all available under the symbol OPTZ @ sec.gov), and had just filed its 10K including audited financial statements. There is no evidence to support the contention that the market value of the trading common stock would be zero, if somehow the government scheme was completed.

Additionally, it is not illegal to pay a broker to buy shares of stock in the market. The court in US v. Laurienti stated the disclosure of bonus commissions is not required by law, and is not criminal conduct. In US v. Skelly the court stated there is no SEC rule requiring registered representatives who deal with customers to disclose their compensation whether pegged to a particular trade or otherwise. In addition the Wall Street Journal published an article on April 14, 2014 that discusses brokers being paid additional fees for buying securities for their clients and whether there should be legislation or regulation controlling the practice. There is none currently, and nothing in the law or SEC regulations discusses fees paid to a broker paid by an issuer.

Lastly the district court erred in imposing a sentence which was not consistent with the length of sentences imposed nationally in securities fraud cases. In US v. Wills the court has noted that the sentencing reform act of 1984 "whence the language in sec 3553 (A)(6) comes "was intended to eliminate national disparity". In US v. Paris the court stated it was clear that, in other cases, there was a correlation between the losses and the periods of incarceration.

The court in Paris stated "the guidelines should be a starting point, it is difficult for a sentencing judge to place much stock in a guidelines that does not provide realistic guidance". To their credit the government lawyers shared the judges angst. As stated by the court it was admirable of the government lawyers to discharge their high duty "to seek justice and not merely convict".

The court asked counsel to search nationwide for similarities in sentencing in securities fraud cases. The court stated "it was perfectly clear that there was a correlation between the losses in those cases and the periods of incarceration". The government provided the

court a survey divided into various categories. The survey included non-cooperating intended losses in amounts from $1.1 million to $12 million, the lowest category of losses. There were no losses in the survey less than $1.1 million. The length of imprisonment for these cases ranged from 6 months to 108 months. Focusing on the four cases in the million dollar range ($1.1 to $1.3 million) the lengths of imprisonment ranged from 6 months to 52 months, or an average of 27 months.

Even using the government's determination of $500,000 for this example regarding the petitioner's case, the extrapolation from the survey's findings would result in an equivalent sentence of 11 months. ($500,000 divided by $1,200,000 average survey loss multiplied by the 27 month average survey length of imprisonment).

The petitioner has currently been incarcerated for over 24 months, and respectfully requests an expeditious handling of the motion resulting in immediate release.

_____

March 2, 2015

Kevin P. Brennan

*Kevin Brennan*

Certificate of Service

I hereby certify that I served a true and correct copy of the within Motion for Release by first call United States postage prior to 5p.m. upon the following counsel this 2nd day of March, 2015:

**Wilfredo Ferrer**
OFFICE OF THE UNITED STATES ATTORNEY
99 N.E. 4th Street
Miami, FL   33132-2111

**Kathleen Salyer**
OFFICE OF THE UNITED STATES ATTORNEY
99 N.E. 4th Street
Miami, FL   33132-2111

**Nicole Mariani**
OFFICE OF THE UNITED STATES ATTORNEY
99 N.E. 4th St.
Miami, FL   33132-2111

**John Shipley**
OFFICE OF THE UNITED STATES ATTORNEY
99 N.E. 4th St.
Miami, FL   33132-2111

By: *Kevin Brenna*

